POLEN, Judge.
Frank R. Branca appeals from a final declaratory judgment the trial court entered on April 17, 1991, in favor of the City of Miramar. The City of Miramar sought a declaratory judgment pursuant to Chapter 86, Florida Statutes, with respect to a City of Miramar Ordinance that had created a pension plan of which appellant was the only vested beneficiary. The trial court held the ordinance to be unconstitutional under Article X, Section 14, Florida Constitution, and invalid under Chapter 112, Part VII, Florida Statutes. The City cross-appeals the court’s award of attorney’s fees to Branca to compensate him for defending the suit, as well as the court’s refusal to reserve jurisdiction in the final judgment to award supplemental relief the City requested. We affirm all issues on appeal; on the City’s cross-appeal we affirm, although we note harmless error as to the second point.
Appellant first argues that the City lacked standing to seek a declaratory judgment regarding the validity of its own ordinance. The record shows that the idea for Ordinance 88-16 originated in 1988 when appellant, who was then Mayor of the City of Miramar, approached the City’s Finance Director, Jack Neustadt and requested that Neustadt inquire into exclusive retirement systems for elected officials in Florida. Thus, the ordinance was requested by the administration, which at that time was under appellant’s direction. Eventually, the ordinance was presented to the City Commission and approved.[1] Soon after the ordinance was enacted, an election took place in the City that resulted in the election of some new commissioners. It was publicly stated by the officials who were running for office that they would make every attempt to defeat the pension plan and ordinance. The ordinance was in fact repealed on May 15, 1989, by the City Commission.[2] Appellant’s pension payments continued, however. The monies were paid from a budget item entitled “disputed benefits payable.” The City Clerk submitted Ordinance 88-16 to the State of Florida Department of Administration, Division of Retirement (“Division”) for review. The Division’s general counsel reviewed the ordinance and concluded that it violated Article X, Section 14, of the Florida Constitution and Part VII of Chapter 112, Florida Statutes. Soon after receipt of the Division’s legal opinion, the City filed a complaint in order to obtain a definitive ruling in the form of a declaratory judgment with regard to the constitutionality and enforceability of Ordinance 88-16.
Under the facts presented, we hold that the City had standing to seek this declaratory judgment, because the circuit court is the proper tribunal to determine the constitutionality of ordinances and proposed ordi *1376 nances.[3] § 86.011, Fla.Stat.; see generally, City of Miami v. Butcher, 303 So.2d 378 (Fla. 3d DCA 1974); West Palm Beach Assoc. of Firefighters v. Board of City Commissioners of the City of West Palm Beach, 448 So.2d 1212 (Fla. 4th DCA 1984); Lamar-Orlando Outdoor Advertising v. City of Ormond Beach, 415 So.2d 1312 (Fla. 5th DCA 1982). At bar there is also a compelling public interest in settlement of controversy involving the disbursement of public funds. See Kaulakis v. Boyd, 138 So.2d 505 (Fla.1962).
Appellant next argues that the City should be estopped from denying him pension benefits, notwithstanding the ruling that Ordinance 88-16 is unconstitutional, because he retired in good faith reliance on representations that “the pension was legal, valid and good.” The trial court found “[t]hat there was no representation of any fact by the City of Miramar relative to Defendant Branca’s retirement rights under Miramar Ordinance 88-16, which the City now seeks to deny.” It is undisputed that the City paid appellant pension benefits after his retirement and continued to do so after the City Commission repealed Ordinance 88-16, until the ordinance was declared unconstitutional. We conclude that the City’s representations to appellant, on which appellant relied, were representations of law. As a result, estoppel will not lie. See The Department of Revenue v. Anderson, 403 So.2d 397, 400 (Fla.1981). Notably, however, even where there is reliance upon representations of fact, logically estoppel will not be applied where such application would achieve an illegal result or one contrary to public policy. We now turn to the issue of whether Ordinance 88-16 is unconstitutional.
Section 112.048, Florida Statutes, predates the enactment of Article X, Section 14, Florida Constitution (1968), and Chapter 112, Part VII, Florida Statutes.[4] Article X, Section 14, provides:
A governmental unit responsible for any retirement or pension system supported in whole or in part by public funds shall not after January 1, 1977, provide any increase in the benefits to the members or beneficiaries of such system unless such unit has made or concurrently makes provision for the funding of the increase in benefits on a sound actuarial basis.
Section 112.048 mandates that cities must provide a retirement benefit of half-pay of an elective officer who voluntarily retires and who has held office in that city for a period of twenty (20) consecutive years.[5] It does not mandate retirement benefits for officials who serve less than the twenty consecutive years. The trial court found, and certainly an argument can be made, that the creation and establishment of a retirement plan for Miramar elected officials under Ordinance 88-16 was an increase in benefits as contemplated in Article X, Section 14, because no such pension benefits existed for elected officials prior to the enactment of Ordinance 88-16 apart from those mandated in section 112.048, Florida Statutes. As such, Ordinance 88-16 would be subject to the requirements of Article X, Section 14.
We acknowledge that section 112.-625(l)(b), Florida Statutes, provides an exception to the foregoing funding requirements in the case where the plan is unfunded and maintained by an employer primarily for purposes of providing deferred com *1377 pensation to a select group of management or highly compensated individuals. However, there is substantial, competent evidence in the record to support the trial court’s finding that Ordinance 88-16 did not constitute a deferred compensation plan.[6] Notwithstanding, we need not resolve the issue of whether the Ordinance’s enactment constituted an “increase” in benefits under Article X, Section 14, Florida Constitution. Rather, we certify the following question:
WHETHER ARTICLE X, SECTION 14, AND THE REQUIREMENTS THEREOF APPLY ONLY TO EXISTING COUNTY OR MUNICIPAL PENSION PLANS, OR WHETHER THE REQUIREMENTS ALSO APPLY TO COUNTY OR MUNICIPAL PENSION PLANS THAT INCREASE OTHER EXISTING GOVERNMENTAL [i.e., STATE] PENSION PLAN BENEFITS.
As to the first issue on the City’s cross-appeal, we hold that the trial court’s award of attorney’s fees to appellant Bran-ca was proper. A public official is entitled to representation at the public’s expense where the litigation (1) arises out of or in connection with the performance of their official duties and (2) serves a public purpose. See Thornber v. City of Ft. Walton Beach, 568 So.2d 914 (Fla.1990). The subject of the action below was an ordinance enacted while appellant was Mayor of the City of Miramar. As Mayor, he initiated the process of drafting said Ordinance. In view of the fact that the outcome of the litigation would determine whether the City would be obligated to pay appellant a substantial sum of money in public funds over his lifetime, it served a public purpose. Thus, we affirm the trial court’s attorney fee award to appellant.
Regarding the City’s second point on cross-appeal, we hold that any error the court committed when it struck its provision reserving jurisdiction in the proposed final judgment for supplemental relief, is harmless. Appropriate supplemental relief under section 86.061, Florida Statutes, may be sought notwithstanding a lack of express reservation of jurisdiction in the final declaratory judgment. Haft-Gaines Co. v. Lakes of Inverrary Condominiums, Inc., 432 So.2d 729, 731 (Fla. 4th DCA 1983). As a result, the trial court’s striking of the provision does not constitute reversible error.
Accordingly, we affirm all points on appeal with the exception of the constitutional question, which we certify herein; we affirm both points on cross-appeal.
ALDERMAN, JAMES E., Senior Justice, concurs.
FARMER, J., dissents with opinion.

. In accordance with the ordinance, the only contribution to be made by the elected official was 5 percent of his or her salary. An elected official retiring after twenty years would receive annually 50 percent of his or her average annual salary for the preceding five years. Earlier retirement reduced the pension benefits. When these contributions were exhausted, the ordinance provided that the benefits “shall be paid by the City from its general funds”. Appellant’s contributions were exhausted two months after he retired.

. The new commissioners were elected in 1988. Appellant retired in April and the Commission repealed Ordinance 88-16 on May 15, 1989, through its enactment of Ordinance 89-30.

. Appellant argues that the City’s proper recourse would have been to sue its actuarial consultant, since the actuary advised the City that the ordinance was constitutional. However, we agree with the City that such action would have left unresolved the constitutional issue.

. Section 112.625(l)(a-f) define six types of retirement or pension plans that are exempt from the funding and actuarial requirements stated in Part VII.

.The trial court found that if appellant had not retired as Mayor in mid-term on April 3, 1989, and had completed his term in office, he would have served the City of Miramar for eighteen (18) consecutive years. His term of office began March 6, 1973 and would have ended March 12, 1991. His resignation was a voluntary .act. Whether appellant would have been reelected in 1991 to permit him to complete twenty (20) years with the City, would be speculative.

. Mr. Palmquist, the actuary who assisted with creation of the Ordinance, testified that the Ordinance was a plan of deferred compensation as just described; however, he admitted that he did not mention this exception at any public hearing held in connection with the Ordinance’s enactment. Mr. Palmquist further conceded that he first went on record as describing the Ordinance as being one of deferred compensation, after the Division's legal opinion that found the pension plan to be unconstitutional. Furthermore, the Ordinance, according to Mr. Palmquist, did not provide for a “named fiduciary" or “plan administrator” as required by section 112.625. The City’s expert witness, Fred Mabry, testified that the ordinance did not create a deferred compensation plan. Moreover, nowhere in the ordinance is it described as creating a deferred compensation plan; the City Attorney also testified that it was never intended to create a deferred compensation plan.